May it please the Court, my name is Tracy Turner and I'm here on behalf of the appellant Wilford Keagy. Plaintiffs have invoked the Fair Housing Act in Section 1983 in this case to sue Mr. Keagy for alleged racist statements at a meeting of landlords and property managers and for advocating drug testing under landlord practices that plaintiffs claim were discriminatory. These claims do not comport with the First Amendment and, more importantly, for the purposes of this appeal, do not amount to a violation of clearly established law. JUSTICE ALITO Could I ask you something about the procedural status of the case in jurisdiction? MS. TURNER Yes, Your Honor. JUSTICE ALITO If I understand this right, both sides are agreed that we don't have jurisdiction over this, or are they? I'm not really clear. MS. TURNER I can go through step-by-step the jurisdictional analysis. The district court entered an order that completely precluded Mr. Keagy from raising the qualified immunity. Mr. Keagy is entitled to appeal that denial. KAGAN But you never moved for a grant of qualified immunity, right? MS. TURNER I did not, but this is an unusual circumstance where the court actually took the ---- KAGAN All right. And if we were to reverse it, what would happen? MS. TURNER Well, we'd at least have to, and the plaintiffs seem to concede that the court's order should at least be vacated. KAGAN Right. So why don't we just vacate the order, since they agree it should be vacated, and stop the argument? MS. TURNER Well, at this point, in order to review the district court's, the merits of the district court's claim ---- KAGAN But why do we have to review the merits? The opponent, your opponent has agreed it should be vacated. That's what he wants to do. That's all we could do, because that's all we have before us, so why don't we just vacate it? MS. TURNER Well, at this point, we've all established a record. We've briefed the agency. KAGAN What record? There is no record. The only record, what record do we have? Why are we operating on? MS. TURNER Well, the district court was, the only thing it had before it was the prior summary judgment proceedings, and that, you know, plaintiffs seem to be proceeding under those facts as well. They submitted all of their summary judgments. KAGAN Well, their claim was that what we're really doing, and I think it's not unfair reading of the record, was simply telling the judge that when it came time to decide the qualified immunity question after this first bifurcated trial that they were asking for, he should do it as an additive law and rather than send it to the jury and it shouldn't go to the jury. And they weren't asking him to do it then because there was no record, and they weren't asking him to do it. MS. TURNER Well, their motion does ask for it. They may not have intended to do it, but I don't think it's up to the district court to have to read between the lines. Reading from their motion, which they call the motion in limine. I'm sorry, Your Honor. CHIEF JUSTICE ROBERTS I'm just trying to straighten out in my mind. The other side makes the motion. The defendant makes the motion in limine to preclude, or rather the plaintiff makes the motion in limine to preclude the defendant from making a qualified immunity motion. MS. TURNER Exactly. CHIEF JUSTICE ROBERTS The judge grants it. There is an appeal to us of the order granting that motion in limine, and both sides are agreed that the order on the motion in limine should be vacated. Have I got that  MS. TURNER Yes, Your Honor. Both sides are in agreement that the order should be vacated. I think the question is, you know, why at this point send it back without any appropriate instructions regarding the merits of these claims, and we'll just have to have another dispositive motion. The parties will have to rebrief. The district court will have to go through a senate appeal. KAGAN In fact, you also let the time for dispositive motions go a long time ago, so there wasn't the judge would probably be able to simply preclude it. Wasn't this on the eve of trial? MS. TURNER It wasn't the first trial. I mean, the problem that I have with this order is that she is saying, first of all, she is making a denial based on qualified law from qualified immunity pursuit and not just on the merits. But she then says, not only would any reasonable government agent know that it's a violation of law, blah, blah, blah, Kege did know. So, you know, in effect, she's making a finding that Kege is an agent of the city, and I thought that was one of the issues that was supposed to be determined in the first phase of the trial. MS. TURNER I'm sorry, Your Honor, I'm not sure. MS. TURNER Well, what was the first – isn't there a question of fact as to whether Kege is an agent of the city? MS. TURNER Well, I think the problem is that the district court held that Mr. Kege can be sued for his speech because he lost his First Amendment rights as this quasi government official. And since his liability – Kagan Well, no. What he was doing was sending it off for trial on the question of whether he was an agent of the city, right? MS. TURNER Well, I guess the point I'm trying to get at, Your Honor, is that at this point, his liability depends on the agency theory. So if he's not an agent, then he has First Amendment rights, and the claims are gone. So why not – Kagan So – MS. TURNER It's dependent on his agency. Why not have the qualified immunity determined first, and then there's no need to go to trial? And isn't that – you know, that's the purpose of qualified immunity and why there's an interlocutory appeal. Kagan You didn't move for that. That does make sense. That's what you usually do. But here, it wasn't done. MS. TURNER Well, there wasn't an opportunity because the district court kind of took it as a preemptive. Kagan Of course there was an opportunity. You just didn't do it. There was plenty of opportunity. You just never did it. MS. TURNER Well, at this point, we have the district court's ruling, though, and we have to do something with it. Kagan But the ruling is only a ruling – MS. TURNER I guess your problem – MS. TURNER It's a ruling denying a motion in limine, which if it's vacated, it just goes back to square one. Kagan Well, it's actually granted. MS. TURNER I mean, granting a motion in limine so that we – so if we deny, if we reversed it, we're just back at square one. We – you still don't have a grant of immunity. We couldn't give you a grant of immunity. CHIEF JUSTICE ROBERTS I think it's even a little more balled up than that. Tell me if I've got this right. Keegee starts out by saying, hey, I'm just some guy expressing my opinion, and I've got a First Amendment right to do that, even if you think my opinion is outrageous, and under Claiborne hardware, even if my opinion advocates violations of law, and that is First Amendment law under Claiborne hardware, if the threat isn't imminent enough. And then the plaintiff says, we think you don't have any First Amendment right to advocate violations of law because you're not just speaking as some guy, you're speaking as a government official, the chairman of this quasi-governmental neighborhood organization. Well, he says, I don't think I am. I'm just some guy. But if I lose on that, if I really am the chairman of a quasi-governmental organization, then I'm entitled to qualified immunity because I wouldn't necessarily have known that what I said, which I don't agree with the plaintiffs on what I said, is clearly violative of the constitutional rights or Yes, Your Honor. That sounds right. It was sort of hard to understand, and I didn't know if I did. Yeah. So what is the status right now? Have you had a trial on any of these issues? No, there hasn't been a trial on any of these issues at this point. And, you know, I don't know exactly what to call a plaintiff's motion. I think it can best be considered a motion for partial summary judgment on the qualified immunity claim. And, you know, we did cite the NAVCOM case where, even though it wasn't the party who is moving for summary judgment, if in reviewing the party's motion – I'm sorry – if in reviewing the court's order granting summary judgment for one party, you have to discuss the merits and you realize that, in fact, summary judgment should have been entered for the other party, the court has jurisdiction to do that. If we have jurisdiction to begin with, but we can't create jurisdiction by that possibility. Well, the jurisdiction comes from the qualified immunity and the right to take an interlocutory appeal from the denial of qualified immunity. Denial of a motion to grant qualified immunity, which I've never seen a case like this. Have you ever seen one? Well, no. It's not a motion. I admit it's unusual. It's a very odd procedure that she would make that ruling. I mean, if the – I'm assuming that you didn't move for qualified immunity because you're contesting the agency point, and that after the issue was determined, whether or not he was an agent, then you would argue the qualified immunity. You could do that as a motion for judgment on the law on that issue at some point after that determination. Well, I don't know what the considerations were at trial, but I don't think it matters because at this point, you know, we have this order and we have to do something with it. Well, no, no. What I just said does matter because it's saying when did you have the opportunity to appeal this. And by issuing this order before you even determined the predicate fact, if we don't have jurisdiction to review it, then you're out of luck. You're not ever even going to be able to assert qualified immunity, assuming the jury finds that there was an agency theory. And the jury could come back and say, no, he wasn't an agent. He was expressing his personal opinions, and it's protected by the First Amendment. Well, I think we're here. The only reason these claims are going forward is on an agency theory. Did the judge grant summary judgment on whether he is acting as an agent of the city? No. The judge said he would have, if he was an agent, then he lost his First Amendment rights. So these claims at this point depend on the theory that he is a government agent. It'll be up to the jury, then. But also, I mean, it isn't inconceivable that there could also be a qualified immunity claim that even if he was an agent in some respect. I mean, you also, as I understand it, or your opponent is also arguing that he still might not have a First Amendment right, and you might be able to argue that even if that were so, it wasn't clearly established. Well, I mean, it isn't clear to me that the agency theory settles the qualified immunity question. And, in fact, as I understood the import of the motion, it was at that point you can decide it, but not that it's necessarily foreordained. Well. Does the agency theory settle? Does the agency determination necessarily settle the qualified immunity question? It doesn't sell the agency theory. It doesn't. But the problem is that we're kind of going backwards in that, you know, since the only basis for his liability at this point is under this agency theory, and to the extent he is an agent, he's entitled to qualified immunity, he has a right to appeal this blanket denial of his right to assert defense. But isn't it true that the only basis for his liability is as an agent? And on these claims he's entitled to a qualified immunity claim. As opposed to operating under color of State law, which isn't necessarily an agent? I'm sorry, Your Honor, can you repeat that? As opposed to operating under color of State law, which doesn't necessarily require that he be an agent. The claims go back to the district court, Your Honor, held that these claims can proceed under the theory that he was speaking as a government official and lost his First Amendment rights in that capacity. And, you know, we're saying to take this individual and say, I'm sorry, you lost your First Amendment rights because you were serving in this quasi-governmental role, and not provide the government the authority. So are you also saying that even if you determined I was an agent, I wouldn't reasonably have known that you were going to find that, and therefore I still have qualified immunity? Or shouldn't you also be saying that? I'm sorry, Your Honor. Can you repeat the question again? Are you not also saying that even if the jury were to conclude that he was an agent, there was still a reasonable person might have thought they weren't going to find that? We're saying that assuming Mr. Keegee is found to be an agent, assume Planoff's own theory to be true, he's entitled to qualified immunity because the conclusion that underlie the district court's denial of immunity, that the First Amendment doesn't apply to government officials, is wrong. Well, no, you didn't appeal that order. That also seemed out of the proper procedural order. What was that one in response to? Well, the problem we had was with this district court order in denying the qualified immunity at all. At this point, you know, with the order there, Mr. Keegee doesn't have a right to assert the defense. So that was the reason for bringing the appeal now. And, you know, Planoff tried to make a waiver argument. In fact, the cases they cite stand for the proposition that if you don't take advantage of the first opportunity to appeal the denial, then you lose. So that's why we're here. So do you think, let's assume we were moving ahead. If we were moving ahead, would we as ordinarily take the facts, as ordinarily in a qualified immunity appeal, take the facts most favorable to a plaintiff, or as ordinarily in a summary judgment review, take them as most favorable to the nonmoving party? Which one do we do? We assume. They're different here, right? Yes, Your Honor. We assume that we have to take Planoff's factual assertions as true. And, you know, our argument proceeds from that basis. But that's very peculiar, because if then it turns out that those facts aren't true after trial, then what happens? Yeah. What happens if you go to trial and you now prove that, in fact, he didn't say these things? Well, the idea of the qualified immunity is to provide, you know, a... You have to pay win, but what if you lose? Let's say you lose, okay? And we go back. And so there's a denial of you can't raise the appeal, but now you're going, you can't raise qualified immunity, but the facts may not turn out that way. I mean, isn't this a classic interlocutory appeal as to what she actually decided? She didn't decide to grant you qualified immunity. She only decided to deny it. And the facts might, well, matter. But I guess that's the problem, is that she has completely precluded Mr. Kiki's ability to raise this defense. You know, I'm not sure. I have trouble understanding what the district judge did, but it strikes me there are two levels of immunity claim here. At one level, the plaintiff is saying Kiki said as chairman of this government body to deal with the neighborhood, don't rent to black tenants. Well, that's clearly the government trying to undermine the constitutional and statutory rights of black people who want to rent in the neighborhood. The judge applies cats as far as taking the facts most favorably to the plaintiff to decide whether qualified immunity applies and says no reasonable government official could think that the government could urge not renting to black tenants. That struck me as pretty sensible. But the problem is Kiki says he didn't say that. Kiki says I didn't say don't rent to black tenants. I just said don't rent to dope dealers and some kind of rehabilitation program members and had nothing to do with don't rent to black people. And it strikes me that the jury could say, yeah, we agree with Kiki. He wasn't using code words. He just said what he meant, meant what he said, and it wasn't racial at all. And then I don't know. What does he have? Is it some kind of immunity defense? Is it just a defense that isn't in the nature of immunity? It certainly isn't immunity from suit, qualified immunity from suit that you analyze under cats because for that, you take the facts most favorably to the plaintiff. I don't really know how to analyze it procedurally. Well, if you look at what she actually said, she precluded you from putting on any evidence with respect to a qualified immunity defense. And what I think Judge Kleinfeld is saying is that only if, that's only if the plaintiffs prove their case, right? She hasn't precluded you from showing he was acting as a private individual and exercising his First Amendment rights. No. But she has precluded, you know, one of the defendant's key defenses. And your opponent says, okay, fine. That doesn't make sense. Let's vacate it. So because it doesn't make sense. Of course it doesn't make sense because how do we know what the facts are? And so why are we here? Well, part of the right to appeal a denial of qualified immunity is to have the court answer the question of whether, you know, assuming plaintiff's allegations are true, do they establish a violation of clearly established law? And they don't because his speech was protected. But we're doing a lot of pretending because we don't even have a record to look at. We don't know what facts were brought out or what facts there are. We're not going to just look at the complaint and say you win, you lose. We have a summary judgment motion, but a record. But that isn't the record on which the ultimate decision is going to be made anyway. So it makes just no sense. Well, I think that the court in making its decision on this order was referring back to the prior analysis in the summary judgment motion. But ordinarily am I not right to say ordinarily there's a motion to grant summary qualified immunity. If it is denied, the right to raise it later isn't precluded, right? That's just – I've never seen that. Well, the right to an interlocutory appeal is recognized because if the denial – usually it's a denial of summary judgment. When that's denied, the right not to stand trial is lost. But you never asserted a right. All right. But we have a different – now we have a waiver problem. Because you never asserted a right not to stand trial. You could have. You never made the motion and you waited – you were ready to go to trial. You were there. And then your opponent made a motion which we can debate about whether or what it was, but the one thing it certainly wasn't was a motion to grant immunity and avoid the trial. The – well, certainly the defendant didn't waive his right to assert the defense at trial. Right. But did you waive your right to assert it before trial? You didn't file a pretrial motion for qualified immunity from suit. No, we didn't. I mean, the problem that we have is that, you know, we have this unusual district court order and Mr. Kege has the right to – You might have had a perfectly good reason to because the motion would depend on your saying that Kege was acting for the city and Kege's position is that he wasn't. It's not to be at all critical, but it seems to me that the reason for an interlocutory appeal of an order and the decision on qualified immunity early in the case is when the government actor who is concededly a government actor moves for qualified immunity from suit. The idea was, well, it makes no sense to let the suit go forward and resolve it Well, at this point, Mr. Kege is precluded from raising the defense at all. And I think if you offer – Because you didn't raise it at the right time, not because you're – I'm sorry, because of the order you're saying. Right. Okay. And your opponent says vacate it. So you vacate it. At least we should vacate, yes. We think it would help the litigation to have some instruction to the district court. But that's what you're not entitled to in an ordinary interlocutory appeal. Well, the interlocutory appeal comes in because there is a denial of qualified immunity. And, you know, if we're – if part of the reason why we offer an interlocutory appeal for a denial of qualified immunity is to protect the defendant from the right to – I'm sorry, from having to go to trial, then certainly we want to offer him a way to assert the defense at trial and not have to go through two trials – one of which he's erroneously precluded from raising the defense and the other, you know, following appeal and requiring a new trial. But ordinarily when defenses are precluded at trial, that's what you do, right? When it's a trial defense, that's what you do. You fight it out and you come up here. I didn't let me put on my defense. It happens all the time. It's the policy considerations underlying the qualified immunity that are at issue because, you know, if we – if the government wants to delegate some of its functions to private individuals like Mr. Keegee, and they're going to be subjected to special liability as a government agent, then we should protect them to the same extent that we protect government officials. Thank you, counsel. What you want is an interlocutory appeal of the refusal to allow you to raise a defense at trial. Because the defense – the pretrial – the ordinary pretrial motion is by the laws. So all you can have is a – is an appeal regarding an order about what defense can be raised at trial. Again, you know, our position is that there is an interlocutory – a right to an interlocutory appeal under the collateral order doctrine. But you'd be winning. You'd win. We would vacate the order that precludes you from raising the defense at trial. Yes, Your Honor. We'd love to win, but we'd also like some direction to the district court because we're going to have to go through all this again. Well, she did act – she did act unusually. And I understand why you want some direction, but – and she really shouldn't have made a rolling on an issue like qualified immunity in this context, because no one was given notice and an opportunity to be heard. And the order should be vacated. I just don't think we have a record that we could actually go the other way. I don't even know right now sitting here whether a jury is going to find that it was – he was acting under color of law or acting as the city's agent or acting in his own private capacity to protect his own private interests as a landlord there. So you have a lot more work before we – you know, anybody is going to be able to decide those facts. I think we were trying to proceed by assuming, you know, everything that plaintiffs have said in the case to be true. These claims just can't proceed because they are based on First Amendment protected speech. But if the panel is in agreement, I guess I will not go into the merits unless there's any questions about that. If everything is preserved, we read your briefs. Thank you, Your Honor. Thank you, counsel. Thank you. May it please the Court, Mike Evans for the plaintiffs and appellees. Could I straighten out something to make sure that I'm not lost here? If I understand it, you are in agreement with the appellant and you are confessing error that we should vacate the one and only order that's before us, which is the eliminate order that precludes Kege from raising qualified immunity as a defense at trial. Is that true? We confess error, Judge Kleinfeld, but not on our part. I mean – Well, when you confess error, your part doesn't matter.  We absolutely agree with you that the order should be vacated. It wasn't asked for. It wasn't on a proper record. This is not what you were asking for. We asked – well, you know, we asked to bifurcate trial. Did anybody bother to go back and tell Judge Cooper that this wasn't what you were asking for? You know, I can't answer that question since I wasn't involved in the case. I don't have real personal knowledge, and so I don't know the answer to that question. But it doesn't really matter if the parties are in agreement that we should vacate the order. And that would mean that they can raise qualified immunity at trial, right? Yes. And you agree that they can raise qualified immunity at trial? We filed a motion for bifurcation. You're not going to go – what I'm asking is, are you going to go back to district court and file a new motion saying they can't raise qualified immunity at trial? No. You're in agreement that they can raise qualified immunity at trial? We'll go back to square one as if the – I want a yes or no because I'm building a record here for us to write a disposition. We will not bring any motions pre-trial regarding the merits of qualified immunity. We – all we tried to do is affect the timing. You are in agreement that they can raise qualified immunity as a defense at trial? Absolutely 100 percent, yes. But you're still – just to be clear, I suspect that you're still reserving the argument that it could be decided as a matter of law and may not have to go to the jury, is that right? It's a legal position that it is a question of law for the judge to be decided. But after the trial, after the evidence comes in. After – right, exactly. After all relevant evidence comes in. One of which is whether or not he's acting on behalf of the city when he engages in the alleged discriminatory conduct. So just so it's really clear, your motion was on timing and bifurcation. You didn't ask that this defense be eliminated? No. And you were just as surprised as the other side when the judge came down and just eliminated the defense? Yes. Yes. Obviously, in retrospect, we all – we would have done things differently to leave no possibility for confusion on the part of Judge Cooper. But as Judge President Prezan has pointed out, reading the documents that we filed fairly and objectively, no, we were not seeking this order. And we had no – it didn't help us any. So we had – yeah. There's no reason for us to assume. Interesting. We've just slowed down the trial for however long we've slowed down the trial. Right. So we have an agreement then. Okay. Any other questions? No. Thank you, counsel. Inland mediation is submitted. Thank you.
judges: Kleinfeld, Wardlaw, Berzon